# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **CHRISTIAN RANDOLPH,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **No. A-11-CA-406-SS** |
| | § | |
| **MARTIN J. CIRKIEL and CIRKIEL AND** | § | |
| **ASSOCIATES,** | § | |
| | § | |
| **Defendants** | § | |

## MARTIN J. CIRKIEL AND CIRKIEL & ASSOCIATES' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

TO THE HONORABLE JUDGE SAM SPARKS, U.S.D.J.

NOW COME Defendants Martin J. Cirkiel and Cirkiel and Associates (hereinafter "Defendants" or "Cirkiel"), by and through their undersigned attorneys, and pursuant to F.R.C.P. 56 hereby file their Motion for Summary Judgment and Brief in Support. In support thereof, Cirkiel states as follows:

## I.    INTRODUCTION

Plaintiff Christian Randolph ("Plaintiff" or "Randolph") spent a significant amount of time before this Court seeking relief from his former employer, the Texas Rehabilitation Commission ("TRC") and various officials associated with the TRC. The majority of that time he was *pro se*. However, near the end of that legal odyssey (approximately seven years after Mr. Randolph first attempted to file suit against the TRC in this Court), Mr. Cirkiel agreed to appear as his counsel and represent him in that ongoing litigation. Despite Mr. Cirkiel's best efforts, Randolph's suit against the TRC was disposed of by this Court through summary judgment. Randolph then elected to sue Mr. Cirkiel and initiate this action. The kindest thing one can say about Randolph's

current claims against Cirkiel is that they deserve a fate similar to those in his last lawsuit.

Randolph asserts claims against Cirkiel for professional negligence and breach of fiduciary duty. Cirkiel moves for complete summary judgment on these claims on multiple grounds, set forth below. One strand that ties these arguments together is that <u>Randolph</u> was the one responsible for the fact that his TRC lawsuit was lost on summary judgment and that an appeal was not timely perfected, not Cirkiel. And even if this were not the case, by the time Cirkiel appeared on Randolph's behalf, Randolph could not have prevailed against the TRC as a matter of law—thus Randolph's claims against Cirkiel fail on causation grounds. Indeed, this lawsuit exemplifies the saying "no good deed goes unpunished" and Cirkiel respectfully requests complete summary judgment in his favor.

## II.   SYNOPSIS OF GROUNDS FOR SUMMARY JUDGMENT

Defendants Martin J. Cirkiel and Cirkiel and Associates, move for summary judgment pursuant to FED. R. CIV. P. 56 on the following grounds:

(1)   Plaintiff lacks the necessary expert testimony to establish multiple essential elements of his professional negligence claim.

(2)   By the time Cirkiel appeared as his counsel, Plaintiff could not have prevailed on his underlying claims against the TRC as a matter of law—therefore Randolph cannot meet the causation element of his professional negligence claim.

(3)   Plaintiff's professional negligence claim based upon his failure to perfect an appeal fails both on the undisputed facts and the law.

(4)     Plaintiff's claims that are styled as breach of fiduciary duty claims are nothing more than fractured professional negligence claims and should be dismissed on that basis.

## III.     SUMMARY JUDGMENT FACTS

### A.     Background of Christian Randolph's Dispute with TRC

Plaintiff Christian Randolph began working for Texas Rehabilitation Commission in 1988 to provide translations of medical documentation. *See* Excerpts from the Deposition of Christian Randolph, attached hereto as Exhibit A at 13:24-14:19.  He was later hired by TRC as a full time employee providing the same translation services. Exh. A at 14:17-29.  Randolph alleged that at all pertinent times (including before he began working for the TRC), he suffered from serious mental and physical conditions that he had struggled with all his life, including: paranoid schizophrenia, depression, agoraphobia, and schizoid personality disorder among others. *See* Exh. A at 56:2-57:1; 60:7-12.

When Plaintiff first began working for TRC, he had an office with a door that could be closed. Exh. A at 74:6-75:2.  Randolph alleged that he was not able to work when people looked at or talked to him. *See* Exh. A at 56:2-7.  In 1997, TRC moved to a new office building that had an "open environment"– meaning that Plaintiff no longer had an enclosed office, but instead worked from a cubicle that was adjacent to the cubicles of other TRC staff members. *See* Exh. A at 76:15-79:12.  Randolph admits that it was difficult if not near impossible to work from his cubicle if other staff were talking or looking at him throughout the day. *See* Exh. A at 76:15-79:12.  Plaintiff had originally requested an "accommodation" that an easel be placed in the opening to his cubicle, so he

did not have to worry about people staring at him. Exh. A at 82:11-83:13. Plaintiff also had problems with two employees in adjacent cubicles who would have conversations with each other that Plaintiff could hear. Exh. A at 76:15-79:12. Randolph believed one of these co-workers was homosexual and the co-worker would occasionally discuss things of a sexual nature. Exh. A at 81:8-82:10; 115:7-25.

On September 7, 1999, Randolph filed a Title VII and ADA EEOC complaint and a complaint with the Texas Commission on Human Rights alleging that he was being discriminated against based on gender, sexual harassment and disability. *See* Affidavit of Elizabeth Gregowicz attached hereto as Exhibit B at ¶ 4; Affidavit of Jennifer Hall attached hereto as Exhibit C at ¶ 3. On May 26, 2000, the TCHR issued a determination that there was no evidence of any violation of the law. Exh. C at ¶ 3. The EEOC ultimately investigated Plaintiff's claims and on September 18, 2000, determined that there was no evidence of discrimination or wrongful behavior. Exh. B at ¶ 4. Randolph never appealed that decision, nor did he file a lawsuit within the prescribed period of time after he received that determination. *See* Exh. A at 198:10-12; Exh. C at ¶ 3.

After he filed the TCHR and EEOC complaints, Plaintiff made numerous requests for accommodations that he felt were necessary for his alleged disabilities. Among other things, Plaintiff requested: to be able to work from home so he would not have to make such a long stressful commute; to direct other employees not to speak in the cubicle area; and replacement of the easel which had been determined to be a fire hazard. Plaintiff's last request for accommodation was in May of 2000. *See* Exh. A at 133:13-19; Exh. B at ¶ 5.

On October 6, 2000, shortly after Plaintiff received notice that his EEOC complaint was found to be meritless, he claimed to need to take extended leave to deal with multiple mental issues related to the above-described conditions. *See* Exh. A at 135:2-18. Even though Plaintiff did not formally request FMLA leave, such leave was granted to him after he exhausted his sick leave and accrued vacation time. *See* Exh. B at ¶ 6; Affidavit of Mary Esther Diaz attached hereto as Exhibit D at ¶ 4. Plaintiff's FMLA leave expired on November 20, 2000 and Plaintiff did not return to work. *See* Exh. B at ¶ 6; Exh. D at ¶ 4. TRC sent a letter to Plaintiff telling him that his leave was going to expire and that he needed to report to work by December 4, 2000. *See* Exh. B at ¶ 6; Exh. D at ¶ 4. Plaintiff alleges that he never received this letter. *See* Exh. A at 202:1-9. Nevertheless, on December 5, 2000, TRC terminated Plaintiff's employment for failing to report to work after the expiration of all his accrued leave and his FMLA leave. *See* Exh. B at ¶ 6; Exh. D at ¶ 4.

Randolph never filed a complaint with the EEOC or the Texas Commission on Human Rights alleging that he was being retaliated against, either by his termination or otherwise, based on the earlier filed complaints. *See* Exhibit C at ¶ 6.

**B.     Randolph Files Pro Se Suit Against TRC and Various TRC Employees**

Randolph initially attempted to file suit, *pro se*, against the TRC in 2000. [1] However, this Court denied his Application to Proceed In Forma Pauperis on October 12, 2000. *See* Order Denying Randolph's Application to Proceed In Forma Pauperis attached

---

[1]   Pursuant to FRE 201, Defendants move the Court to take judicial notice of the Court's file and records contained therein in Cause No. A-00-CA-653-SS.

hereto as Exhibit E.[2]  Thereafter, this Court dismissed his claims against the TRC without prejudice.  *See* Order of Dismissal attached hereto as Exhibit F.

Randolph refiled his lawsuit on September 6, 2002.[3]  Eventually, this Court granted a Motion to Dismiss in favor of the TRC on sovereign immunity grounds.  *See* December 19, 2002 Order attached hereto as Exhibit G.  This Court thereafter granted a Motion to Dismiss on behalf of the individual defendants.  *See* April 15, 2003 Order attached hereto as Exhibit H.  Randolph, still pro se, filed a timely Notice of Appeal.  *See* Notice of Appeal attached hereto as Exhibit I.

**C.     Fifth Circuit Remands Suit Against TRC and Cirkiel Appears as Counsel**

After a lengthy appeal, the Fifth Circuit Court of Appeals issued an unpublished opinion affirming the dismissal of all claims against the individual plaintiffs and remanding the action only as to claims against the TRC under section 504 of the Rehabilitation Act of 1973.  *See Randolph v. Texas Rehabilitation Commission*, 214 Fed.Appx. 424, 2007 WL 120271 (5th Cir 2007).

On December 21, 2007, Cirkiel filed his Notice of Appearance in this Court on behalf of Randolph.  *See* Notice of Appearance attached hereto as Exh. J.  Thereafter, Cirkiel filed a First Amended Complaint for Randolph, which was his live pleading at all times thereafter.  *See* Plaintiff's First Amended Complaint attached hereto as Exhibit K. The First Amended Complaint only asserted claims under section 504 of the Rehabilitation Act of 1973 based on an alleged failure to accommodate his disability and the termination of Randolph's employment.  Exh. K at ¶ 41-44.

---

[2]  All exhibits that are pleadings or orders from this Court's file in Cause Nos. A-00-CA-653-SS and A-02-CA-574-SS are certified copies of same.
[3]  Pursuant to FRE 201, Defendants move the Court to take judicial notice of the Court's file and records contained therein in Cause No. A-02-CA-574-SS.

**D.    TRC Successfully Moves for Complete Summary Judgment**

On or about September 17, 2008, the TRC filed a Motion for Summary Judgment. *See* Motion for Summary Judgment attached hereto as Exhibit L. In its Motion, the TRC sought complete summary judgment on Randolph's remaining claims under the Rehabilitation Act. Specifically, the TRC asserted that (1) Randolph's accommodation claims were barred by limitations; (2) Randolph's retaliation claims were barred because he failed to exhaust his administrative remedies; and (3) Randolph could not show that his disability was the "sole cause" for his termination. *See* Exh. L at 6-10.

Cirkiel filed a Response on Randolph's behalf wherein Cirkiel raised the "continuous violation" doctrine in response to statute of limitations defense. *See* Response to TRC's Motion for Summary Judgment attached hereto as Exh. M at 3-4.

On October 27, 2008, this Court signed and entered an Order granting the TRC's Motion for Summary Judgment. *See* October 27, 2008 Order attached hereto as Exhibit N. This Court held, *inter alia*, that (1) Randolph's accommodation requests were barred by limitations; (2) the continuing violation doctrine was not applicable to denials of accommodation requests; (3) Randolph's retaliation claims (including his termination) were barred by his failure to exhaust administrative remedies; (4) even if not otherwise barred, Randolph could not show that his disability was the "sole factor" in the decisions to terminate him or deny his accommodation requests. Exh. N at 5-12.

**E.    Cirkiel Informs Randolph of Dismissal and Right to Appeal**

Following the Court's October 27, 2008 order granting summary judgment, Cirkiel had a face-to-face meeting with Randolph on November 12, 2008. *See* Affidavit of Martin Cirkiel attached hereto as Exhibit O at ¶ 4. Also in attendance at this meeting

was Randolph's therapist, Dr. Charles Holland. Exh. O at ¶ 5. This meeting occurred more than two weeks before the November 28, 2008, deadline for filing a Notice of Appeal. Exh. O at ¶ 6. During that meeting, Cirkiel provided Randolph with a copy of the Order granting the TRC's Motion for Summary Judgment. Exh. O at ¶ 7. Cirkiel informed Randolph that he had thirty days to file a Notice of Appeal from October 27. Exh. O at ¶ 7. He further informed Randolph that Cirkiel's firm was not interested in assisting him with the Notice of Appeal and that if he wanted to appeal, he would have to retain new counsel or proceed pro se. Exh. O at ¶ 8. Randolph indicated that he understood. Exh. O at ¶ 9.

Randolph filed his Notice of Appeal on December 5, 2008. *See* "Notice of Appeal" attached hereto as Exhibit P. In that Notice, Randolph acknowledged that he received a copy of the Order granting TRC's Motion in "mid-November." Exh. P at 1.

On March 17, 2009, this Court entered an Order denying Randolph's Motion to Proceed in Forma Pauperis. *See* March 17, 2009 Order attached hereto as Exh. Q. In that Order, this Court held:

> the undisputed facts were that all times Randolph was represented by counsel, and that he was told of and understood his right to appeal in November of 2008, although he did not appeal until a month later, in December of 2008. Accordingly, there is not basis for finding excusable neglect or good cause for Randolph's failure to file a timely appeal.

*See* Exh. Q at 2.

This Court reiterated its findings in separate Orders on May 22, 2009, and October 14, 2009. *See* May 22, 2009 Order attached hereto as Exhibit R; October 14, 2009 Order attached hereto as Exhibit S. Nevertheless, Randolph filed the instant suit on or about November 12, 2010.

## IV.    SUMMARY JUDGMENT STANDARD

"The purpose of summary judgment is to pierce the pleadings and assess the proof to determine if a genuine need for trial exists." *Quinn v. West*, 140 F.Supp.2d 725, 731 (W.D. Tex. 2001). Summary judgment is appropriate where the record demonstrates that there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); FED. R. CIV. P. 56(c).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Industrial Co. v. Zenith*, 475 U.S. 574, 585-87 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

Summary judgment is also proper if a defendant can show there is no evidence to support an essential element of plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute is genuine if the issue could be resolved in favor of either party." *Id.* (citations omitted). "A fact is material if it might reasonably affect the outcome of the case." *Id.* (citations omitted). The court views the evidence in a light most favorable to the non-moving party. *Id.* Once the moving party has met its burden, the non-moving party has a duty to respond setting forth facts showing there is a genuine issue for trial. *Id.* If the non-moving party fails to do so, summary judgment shall be granted against it. *Id.*; FED. R. CIV. P. 56(e).

# V. ARGUMENT AND GROUNDS

## A. Randolph's Professional Negligence Claim Fails on Multiple Grounds

### 1. Essential Elements of Randolph's Professional Negligence Claim

To recover on a professional negligence claim, a plaintiff must show that (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004). The plaintiff's causation burden in a professional negligence case is to prove that "but for the attorney's breach of his duty, the plaintiff would have prevailed in the underlying case." *Hoover v. Larkin*, 196 S.W.3d 227, 231 (Tex. App.— Houston [1st Dist.] 2006, pet. denied). Plaintiff's causation burden is commonly referred to the "suit within a suit" requirement.

### 2. Plaintiff Lacks the Necessary Expert Testimony to Support the Standard of Care, Breach and Causation Elements of His Professional Negligence Claim

Plaintiff has no expert testimony to support his professional negligence claim. Such evidence is necessary to establish his prima facie case against Cirkiel on multiple elements. On this basis alone, Randolph's professional negligence claim fails in its entirety.

It is axiomatic under Texas law that a Plaintiff must have expert testimony in a professional negligence case concerning the issues of standard of care, breach and proximate cause. *Alexander*, 146 S.W.3d at 119-20; *see also Hoover*, 196 S.W.3d at 231 ("one proves causation in a legal malpractice suit by expert testimony"); *Erseck v. Davis & Davis, P.C.*, 60 S.W.3d 268, 271 (Tex. App.—Austin 2002, pet. denied) ("[i]n Texas, a plaintiff in a legal malpractice suit is required to present expert testimony regarding the

standard of skill and care ordinarily exercised by an attorney"). Thus, as part of Plaintiff's prima facie case, he must present some expert testimony for at least three of the elements of his professional negligence cause of action.

Plaintiff's Amended Petition is not a model of clarity. Neither does it go beyond conclusory allegations concerning Cirkiel's alleged negligence. However, it appears that Randolph claims that Cirkiel was negligent as follows: (1) failing to "adequately" deal with issues concerning the "Continuing Violation Doctrine" to toll the statute of limitations (Amended Petition at ¶ 10); (2) failing to properly advise Plaintiff of his appeal rights (Amended Petition at ¶¶ 11, 15); (3) failing to timely file a Notice of Appeal (Amended Petition at ¶ 16); (4) failing to conduct adequate discovery (Amended Petition at ¶ 13); (5) failing to "properly present documents and data evidence" (Amended Petition at ¶ 18, 19).

At least four of these grounds for professional negligence require expert testimony concerning the standard of care and breach. The questions of whether Cirkiel "adequately" presented an issue on summary judgment, conducted "adequate" discovery, "properly" presented evidence and "properly" advised Randolph of his appeal rights necessarily require expert testimony to articulate what the standard of care would be in those particulars and whether Cirkiel met the standard of care. *See Alexander*, 146 S.W.3d at 119 ("the wisdom and consequences of ... tactical choices made during litigation are generally matters beyond the ken of most jurors.").

Additionally, and perhaps more importantly, Randolph's professional negligence claim must fail in its entirety because he has no expert testimony concerning causation. In this instance, Randolph must proffer expert testimony for the proposition that he would

have prevailed in his underlying suit against the TRC "but for" Cirkiel's alleged negligence (the "suit within a suit" requirement). Indeed, in this instance his burden has multiple layers, because for causation purposes Randolph must present expert testimony demonstrating: (1) that he would have won a successful appeal before the Fifth Circuit absent Cirkiel's alleged negligence relating to perfecting that appeal; and (2) Randolph would have, on remand, prevailed in his suit against the TRC.

For a host of reasons, Randolph does not (and cannot) provide the expert testimony necessary to make his prima facie case in these respects. On this basis alone, complete summary judgment is appropriate for Randolph's professional negligence claim.

3.     <u>The is No Genuine Issue of Material Fact Concerning Randolph's Failure to Appeal the Order Granting Summary Judgment to the TRC</u>

The allegation with the most specificity (relatively speaking) against Cirkiel relates to Randolph's failure to timely perfect his appeal from the Court's order granting summary judgment on behalf of the TRC. Randolph alleges, in contradictory fashion, that Cirkiel failed to advise Randolph that he had a right to appeal within thirty days (Amended Petition at ¶ 15) and Cirkiel failed to perfect Plaintiff's appeal "as they promised Plaintiff they would." (Amended Petition at ¶ 16). However, even putting aside Randolph's failure to demonstrate causation (through expert testimony or otherwise) this portion of Plaintiff's professional negligence claim fails on the undisputed facts.

The Court granted summary judgment for TRC and ordered that Randolph take nothing judgment on October 27, 2008. Exh. N. Thereafter, Cirkiel met with Randolph on November 12, 2008 with Randolph's therapist present. Exh. O at ¶¶ 4-5. This

meeting took place more than two weeks before the November 28, 2008, deadline for Randolph to appeal. *See* F.R.A.P. 4(a)(1)(A); Exh. O at ¶ 6. During that meeting, Cirkiel informed Randolph that his firm was not interested in appealing and that if Randolph wanted to appeal, he would have to do so himself or retain new counsel. Exh. O at ¶ 8. Cirkiel concluded that Randolph understood. Exh. O at ¶ 9. Randolph filed a pro se Notice of Appeal on December 5, 2008. Exh. P. That notice was not timely filed, of course, and ultimately Randolph was not given leave to appeal.

Even without Cirkiel's unequivocal testimony, there is no genuine issue of material fact concerning Randolph's failure to appeal and Cirkiel is entitled to judgment as a matter of law. Randolph himself does not dispute that he met with Cirkiel and his therapist and received notice of the summary judgment in "mid-November"—these admissions are found within his Notice of Appeal. Exh. P. He further states that the dismissal order was "stamped October 27, 2008," so Randolph knew when the order was entered. Exh. P. While Randolph professes ignorance about the notice of appeal process and the deadline for doing so, he had the wherewithal to file a timely notice of appeal, *pro se*, the first time his case was dismissed, in 2003. Exh. I.

Cirkiel would further note that this Court has, on three separate occasions, considered and rejected Randolph's claim that his failure to appeal was due to excusable neglect or good cause (i.e. Cirkiel's negligence). *See* Exhs. Q, R & S. There is no basis to conclude that Randolph has any facts to support his contention now, when he had none before.

In sum, Randolph cannot create a genuine issue of material fact concerning his failure to appeal the summary judgment in favor of TRC. It was not the result of

professional negligence by Cirkiel and it cannot form the basis for this suit against him. Cirkiel respectfully suggests that summary judgment in appropriate on this basis.

        4.      <u>Randolph's Claims Against the TRC Were Doomed to Fail Long Before Cirkiel Undertook Representation of Mr. Randolph</u>

The grounds for this Court's summary judgment ruling in favor of the TRC in the underlying action demonstrate the most glaring deficiency with Randolph's case against Cirkiel. It is abundantly clear that Randolph's claims against TRC were doomed to fail before Cirkiel appeared on his behalf. Thus, simply put, no act or omission of Cirkiel (real or imagined) could have proximately caused Randolph to lose his suit against TRC. Randolph cannot establish the causation element of his professional negligence claim as a matter of law.

While the underlying suit was originally brought against the TRC and a collection of individual state employees, by the time Cirkiel appeared as counsel, the only remaining Defendant was the TRC. *See Randolph v. Texas Rehabilitation Commission*, 214 Fed.Appx. 424, 2007 WL 120271 (5th Cir 2007); *see also* Exh. K. Randolph's only remaining causes of action arose under Section 504 of the Rehabilitation Act. *See* Exh. K at ¶ 41-44

TRC moved for summary judgment against Randolph on the following grounds: (1) Randolph's accommodation claims were barred by limitations; (2) Randolph's retaliation claims were barred because he failed to exhaust his administrative remedies; and (3) Randolph could not show that his disability was the "sole cause" for his termination. *See* Exh. L at 6-10.

First, Randolph cannot demonstrate that Cirkiel could have avoided the statute of limitations defense as to his accommodation claims. And the fact that the suit against

TRC was filed too late was Randolph's responsibility, not Cirkiel's. Cirkiel did not appear in the TRC lawsuit until four years after the Original Complaint was filed. Randolph was pro se up to that point. *See* Exhs. H, I & J. Thus, no amount of discovery, "documents and data evidence," or appellate advice would have changed the filing date of the original action or the timeliness of same. It was a *fait accompli*. Neither could Cirkiel change governing law concerning the continuing violation doctrine. This Court did not find that Randolph's argument was insufficient. Rather, this Court held that the continuing violation doctrine does not apply to accommodation claims as a matter of law. Exh. N at 7-8.

Second, Randolph cannot show that Cirkiel could have rescued his retaliation claims, each of which were dismissed because he failed to exhaust his administrative remedies. Exh. N at 8-10. It was undisputed that Randolph failed to exhaust or initiate any administrative remedies at any time following the alleged retaliatory acts. As this Court noted:

> A party, therefore, must file a charge within either 180 or 300 days of the date of the retaliatory act or lose the ability to recover for it. Rehabilitation Act claims are subject to the same procedural constraints, including the administrative exhaustion requirement, as those set forth in Title VII. *Silva v. Chertoff*, 512 F. Supp. 2d 792 (W.D. Tex 2007) (citing *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 303-04 (5th Cir.1981)); *Kurth v. Gonzales*, 469 F. Supp. 2d 415, 424 (E.D. Tex. 2006) (noting exhaustion of administrative remedies is a jurisdictional prerequisite to bringing a retaliation claim under the Rehabilitation Act).

Exh. N at 9-10. Thus, Randolph's failure to exhaust, not Cirkiel's supposed malpractice, was the reason why Randolph's retaliation claim (including his termination) failed. Cirkiel could not have been the cause of the summary judgment in TRC's favor. Moreover, nothing that Cirkiel could have done would have changed the failure to

exhaust seven years prior.   In sum, Plaintiff's professional negligence claim against Cirkiel must fail, as a matter of law, because Randolph cannot possibly prove causation. Summary judgment is, therefore, appropriate.

**B.      Randolph's Breach of Fiduciary Duty Claim is an Improperly "Fractured" Legal Malpractice Claim**

Randolph has added, almost as an afterthought, a breach of fiduciary duty claim to his action against Cirkiel. *See* Plaintiff's Amended Petition at 9-11.   However, it is abundantly clear from his live pleading that he is asserting nothing more than a standard legal malpractice claim and recasting it under a different label.  This is a classic case of improperly fracturing a legal malpractice claim.  Applicable Texas case precedent is clear that such fracturing is forbidden and Randolph's breach of fiduciary duty claim is subject to summary judgment on this basis.

1.      Texas Case Law Concerning "Fractured" Professional Negligence Claims

Texas courts have considered, and repeatedly rejected, efforts by plaintiffs to "fracture" negligence-based claims against attorneys into breach of fiduciary duty, DTPA or other alternative claims.  *See, e.g., Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  "The rule against dividing or fracturing a negligence claim prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims." *Deutsch* at 189.  The *Deutsch* Court continued:

> If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim.  If, however, the client's complaint is more appropriately classified as another claim, for example,

fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence.

*Id.* (citations omitted).

For example, in *Greathouse v. McConnell*, the plaintiff asserted claims against his attorney for legal malpractice (professional negligence), breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraud, DTPA violations, breach of contract, and breach of express and implied warranties. *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist] 1998, pet. denied). The *Greathouse* court held that "[a]lthough Greathouse did allege multiple causes of action, they were all essentially "means to an end" to achieve one complaint of legal malpractice. A cause of action arising out of bad legal advice or improper representation is legal malpractice. *Id.* (citations omitted). The court continued: "[a]lthough Greathouse alleged separate and distinct causes of action, the crux of each of those claims was that McConnell did not provide adequate legal representation to Greathouse." *Id.* The court concluded "[w]e hold that these claims amounted to nothing more than allegations of legal malpractice, and, therefore, McConnell could have obtained summary judgment on the entire case by disproving, as a matter of law, one element of Greathouse's legal malpractice cause of action." *Id. See also Judwin Properties, Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 505-507 (Tex. App.—Houston [1st Dist] 1995, pet. denied) (court affirmed summary judgment on client's contract, warranty, and fiduciary duty claims that were merely restatements of claim for legal malpractice based on disclosure of client's confidential information).

In the specific case of a fractured breach of fiduciary duty claim, "[t]he focus of a breach of fiduciary duty claim is whether an attorney obtained an improper benefit from

representing a client, while a legal malpractice claim asks whether an attorney adequately represented a client." *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.—San Antonio 2003, pet. denied); *see also Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App.—Fort Worth 2002, pet. denied). "Breach of fiduciary duty often involves the attorney's failure to disclose conflicts of interest, failure to deliver client funds, improper use of client confidences, or engaging in self-dealing, while a legal malpractice claim is based on negligence and arises from an attorney giving bad advice or otherwise improperly representing the client." *O'Donnell v. Smith*, 234 S.W.3d 135, 146 (Tex. App.—San Antonio 2007), *aff'd*, 288 S.W.3d 417 (Tex. 2009) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex.1989)).

2.     <u>Plaintiff's Amended Petition Asserts Only Claims Sounding in Professional Negligence</u>

A cursory examination of Plaintiff's Amended Petition reveals that the crux of Randolph's claims (such as they are) are directed at the quality and adequacy of Cirkiel's representation—thus they are for professional negligence alone.

The first basis for Randolph's breach of fiduciary duty claim is the allegation that Cirkiel "breached his fiduciary duties to Plaintiff . . . by claiming attorneys fees and costs to be due to him, when they were not due him." Plaintiff's Amended Petition at ¶28. Of course, Plaintiff has absolutely no evidence to support this assertion and could never produce such evidence. Indeed, it is unclear whether this is simply a prayer for equitable fee forfeiture. *See Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex.1999). More to the point, under Texas law the mere receipt of attorneys' fees from continued representation does not, without more, constitute a breach of fiduciary duty. *See, e.g., Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 433-35 (Tex.

App.—Austin 2009, no pet); *Murphy v. Gruber*, 241 S.W.3d 689, 699 (Tex. App.—Dallas 2007, pet. denied); *Won Pak v. Harris*, 313 S.W.3d 454, 458-59 (Tex. App.—Dallas 2010, pet denied). That is precisely what Randolph claims here, and it is not sufficient to constitute a breach of fiduciary duty claim.

The other bases for Randolph's breach of fiduciary duty claim are the assertions that Cirkiel "fraudulently conceal[ed] from Plaintiff how Defendants had handled the case" and "fraudulently concealed that they had not perfected the appeal as they promised Plaintiff they would. Plaintiff's Amended Petition at ¶¶28-29. These are textbook examples of fracturing a professional negligence claim and are insufficient to properly plead a breach of fiduciary duty. They are complaints about the quality of Cirkiel's representation artfully pled with the phrase "fraudulent concealment."

Plaintiff's negligence count specifically addresses the allegation that Cirkiel failed to perfect an appeal and alleges that Cirkiel was responsible. *See* Plaintiff's Amended Petition at ¶ 15-17. Indeed, what Plaintiff has done is insert the term "fraudulent concealment" before the same facts and alleged conduct, declaring it a breach of fiduciary duty. Texas law forbids such artifice. *See, e.g., Won Pak*, 313 S.W.3d at 458 ("[m]erely characterizing conduct as a 'misrepresentation' or 'conflict of interest' does not necessarily transform what is really a professional negligence claim into a fraud or breach of fiduciary duty claim."); *Murphy*, 241 S.W.3d at 693.

In sum, Plaintiff does not argue, as he must, that Cirkiel self-dealt or placed his own interests above those of Mr. Randolph. Instead his complaint is about the adequacy of his representation, which is (at best) professional negligence. On this basis, Plaintiff's

breach of fiduciary duty claim must fail, in its entirety, as a matter of law and summary judgment is appropriate.

## VI.    CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants Martin J. Cirkiel and Cirkiel and Associates respectfully request that this Court grant their Motion for Summary Judgment, ordering that Plaintiff take nothing by his claims against Defendants and that the case be dismissed in its entirety.  Defendants additionally request such other and further relief, both at law and in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By:    /s/ Michael B. Johnson
Jeff D. Otto
State Bar No. 15345500
Michael B. Johnson
State Bar No. 24029639

701 Brazos, Suite 1500
Austin, Texas 78701
Telephone:  (512) 708-8200
Telecopy:  (512) 708-8777

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 15, 2012, the above and foregoing document was transmitted electronically to the clerk of the Court using the ECF System for filing and was served upon all counsel of record listed below, via ECF, electronic mail and certified mail, return receipt requested.

Donald T. Cheatham
5100 Westheimer Road, Suite 200
Houston, TX 77056
**COUNSEL OF RECORD FOR PLAINTIFF**

<u>/s/</u>　　<u>Michael B. Johnson</u>